**RESOLUTION TRUST CORPORATION, as Receiver for Commonwealth Federal Savings and Loan Association, and Resolution Trust Corporation, as conservator for Commonwealth Federal Savings and Loan Association, Plaintiffs/Counter-defendants,**

v.

**HEINHOLD COMMODITIES, INC., and Geldermann, Inc., Defendants/Counter-plaintiffs.**

No. 89 C 4350.

United States District Court, N.D. Illinois, E.D.

Sept. 29, 1992.

---

James R. Latta, Steven Jay Teplinsky, Mary Elizabeth Gardner, Richard Harry Chapman, Fagel & Haber, Chicago, Ill., Anne C. Conway, Karen C. Dyer, John P. McAdams, and William D. Palmer, Carlton, Fields, Ward, Emmanual, Smith & Cutler, Orlando, Fla., Craig L. Kemerer, Rebecca N. Shepherdson, Douglas G. Thompson, Jr., Finkelstein, Thompson & Loughran, Washington, D.C., for plaintiffs/counter-defendants.

William John Nissen, Daniel Stephen Kelly, Thomas David Rein and David Robert Stewart, Sidley & Austin, Chicago, Ill., for defendants/counter-plaintiffs.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

A savings and loan association entered into an commodity futures agreement with

a commodities trading firm. One provision of this agreement was that if the association ever sued the trading firm and lost, it would pay the firm's defense expenses, namely its attorneys' fees and costs. The relationship between the savings and loan association and the firm soon soured, and the association eventually sued the firm. The trading firm in turn filed a counterclaim for its attorneys' fees and costs. While this suit was pending, the savings and loan association went belly-up and was taken over by federal regulators.

The regulators pursued the association's suit against the trading firm. The suit eventually went to trial before a jury. The jury found in favor of the trading firm. The firm has now filed a motion for attorneys' fees and costs, essentially seeking to have us enter a judgment in its favor on its counterclaim. It also seeks, by way of a second motion, to have this court set the priority for its claim, namely where the firm will stand in respect to the other creditors of the now-insolvent association. For the reasons that follow, we grant in part the firm's motion for attorneys' fees and costs and grant its motion to determine priority.

## BACKGROUND

The case before us today is the amalgamation of three lawsuits arising out of a single commodity trading arrangement. The essentials of the arrangement are as follows. In December 1984 Florida-based Commonwealth Federal Savings and Loan Association ("Commonwealth") entered into a customer agreement with Heinhold Commodities Inc. ("Heinhold"), a futures commission merchant. The agreement was signed by Jason Chapnick, vice-president of Commonwealth. The agreement was ostensibly designed to provide Commonwealth with a hedge to protect it against fluctuations in interest rates. One of the provisions of this agreement was that if Commonwealth ever brought a suit against Heinhold and Heinhold substantially prevailed in the action, Commonwealth would be liable for Heinhold's costs of defending the suit (its attorneys' fees and costs).

Commonwealth did not prosper as a result of its agreement with Heinhold; indeed, it eventually lost in excess of ten million dollars as a result of its trades. Commonwealth decided to sue its trading firm. On May 26, 1989, it filed suit against Heinhold, its parent corporation Geldermann Inc. ("Geldermann"), and others[1] in this Court.[2] The suit alleged fraud under the Commodity Exchange Act, negligence, breach of contract, breach of fiduciary duty, and violations of the Illinois' Consumer Fraud and Deceptive Business Practices Act. On June 15, 1989, Heinhold asserted a counterclaim against the plaintiff for attorneys' fees and costs.

On July 29, 1989, Commonwealth was declared insolvent and the Federal Savings and Loan Insurance Corporation ("FSLIC") became its receiver. One of the assets that passed was the accounts receivable represented by the rights of action owned by Commonwealth, including the claims asserted against the defendants in this lawsuit, which also contained the counterclaim as noted above. (Final Pretrial Order, Attachment B at 2.) On July 30, 1989, the Federal Home Loan Bank Board chartered Commonwealth Federal Savings and Loan Association ("Commonwealth Federal"), and the FSLIC was appointed conservator of Commonwealth Federal.

The Financial Institutions Recovery, Reform and Enforcement Act of 1989 ("FIRREA"), which was enacted on August 9, 1989, abolished the FSLIC. Pursuant to that law the Resolution Trust Corporation ("RTC") became Commonwealth Federal's

---

1. Commonwealth also named Conticommodity Services Inc. ("Conticommodity") as a defendant. Conticommodity was dismissed from this action on May 4, 1990.

2. Commonwealth had earlier filed another suit in Circuit Court for Broward County, Florida ("the Florida suit"). This suit, which sought

damages of fifty million dollars, was removed to federal court in Florida, transferred to this district, and eventually reassigned to me. I consolidated this Florida suit (92 C 1800) with the case before me and dismissed it by agreement of the parties on September 15, 1992. *See* Sept. 15, 1992 Minute Order.

conservator. On March 7, 1991, RTC became Commonwealth Federal's receiver.

FIRREA specifies that claims against a receivership must be filed within 90 days after notice is given to the failed institution's creditors.[3] Fearing that this statute might bar it from asserting its claim for fees and costs if it eventually did win the suit brought by Commonwealth, Heinhold filed an unliquidated, indeterminate claim with the RTC. When the RTC denied this claim, Heinhold filed suit in federal district court for the District of Columbia. That district transferred the case to this district, and the case (91 C 7977) has now been consolidated with this action for all purposes.

As conservator and later as receiver for Commonwealth Federal, the RTC decided to pursue the savings and loan association's action against Heinhold and Geldermann. The case eventually went to trial before a jury. The jury returned a verdict against the RTC in favor of Heinhold. Heinhold[4] has filed a motion to recover the attorneys' fees and costs that it expended in defending itself in this action.[5] Heinhold has also filed a motion to determine the priority of its claim.[6]

## I

### HEINHOLD'S MOTION FOR ATTORNEYS' FEES AND COSTS

Heinhold submits two bases upon which we could award attorneys' fees and costs: pursuant to contract or pursuant to the Equal Access to Justice Act. We begin with the first. The contractual provision relied on by Heinhold is Paragraph 3 of the Customer Agreement ("Paragraph 3") that

it entered with Commonwealth. This paragraph states, in pertinent part:

> Customer shall pay Heinhold ... Heinhold's costs and attorneys' fees incurred in defending against any claim brought by Customer in any suit, arbitration or reparations proceeding in which Heinhold is the substantially prevailing party.

Commonwealth was the "Customer" referred to in the Agreement. Since Commonwealth did file suit against Heinhold and lost—exactly the eventuality addressed in the provision—this portion of the Customer Agreement, if enforceable, would certainly permit Heinhold to recover its fees and costs.

RTC argues that the provision is not enforceable. First, it contends that the contractual provision is unenforceable against the RTC since enforcement would undermine the agency's ability to perform its statutory function. Alternatively, RTC argues that the provision is unenforceable because the Customer Agreement, of which it is a part, fails to meet the requirements of FIRREA, specifically 12 U.S.C. §§ 1821(d)(9) and 1823(e).

1. *Does Enforcement of the Contractual Provision Undermine RTC's Ability To Perform Its Statutory Function?*

The RTC asserts that a private contractual provision may not frustrate the operation of a duly enacted federal statute. RTC contends that Heinhold's claim interferes with its ability to perform its statutory function of liquidating the assets of failed thrifts under FIRREA. It explains that the RTC has a statutory mandate to maximize the receivership assets and to minimize its losses[7] and that this statutory

---

3. 12 U.S.C. § 1821(d)(3)(B)(i).

4. Actually, the motion was filed by Heinhold Holdings, Inc., as assignee of Heinhold Commodities, Inc. To reduce confusion, we refer only to "Heinhold"; however, we understand this title to include Heinhold Holdings, Inc.

5. Heinhold includes the fees and costs that it incurred in defending the Florida suit, which was consolidated for all purposes with 89 C 4350 by minute order on September 15, 1992. *See supra* note 2.

6. Heinhold filed this motion in the case that it had filed against the RTC. As detailed above, that action has been consolidated with this case for all purposes; hence, we treat this motion as having been brought in this case.

7. The statement of the RTC's duties listed in 12 U.S.C.A. § 1441a(b)(3) includes the following:
   (C) To conduct the operations of the Corporation in a manner which—
   (i) maximizes the net present value return from the sale or other disposition of institu-

duty obligated it to pursue Commonwealth's claim against Heinhold. Now that it has lost its claim against Heinhold, RTC contends that enforcing Paragraph 3 against the receivership assets would penalize it for pursing its legal obligations. We believe that RTC's arguments miss the mark.

Neither FIRREA nor any other federal statute expressly invalidates contractual attorneys' fee provisions in situations such as ours, where federal regulators assume rights under contract pursuant to their takeover of a failed savings association. Thus, there is no explicit statutory prohibition on the enforcement of such provisions. Where a party seeks to use public policy, rather than explicit statutory language, to invalidate a contract or contractual provision, the Supreme Court has declared that public policy must be ascertained by reference to laws and legal precedents not from general considerations of supposed public interest. *See Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945); *see also FDIC v. Aetna Cas. & Sur. Co.*, 903 F.2d 1073, 1077 (6th Cir.1990) (applying *Muschany* where FDIC attempted to invalidate provision in insurance contract on grounds that it precluded FDIC from discharging its responsibility in connection with marshalling assets of failed bank).

After reviewing the relevant caselaw, we conclude that the public policy interest articulated by the RTC is an insufficient reason to invalidate the contractual provision awarding Heinhold its attorneys' fees and costs where it prevailed in a suit brought by Commonwealth. In *Interfirst Bank Abilene, N.A. v. FDIC*, 777 F.2d 1092 (5th 1985), the Fifth Circuit held that a claimant could not recover attorneys' fees from the assets of an insolvent bank because to permit such recovery would run afoul of the requirement that the bank's assets be ratably distributed. *Id.* at 1097. The court, however, carved out an exception for contractual attorney fee provisions: "We ... conclude that where recovery of attorneys' fees *is not specified in the parties' contract* or where there is no collateral fund from which they can be recovered, a claim for attorneys' fees cannot be asserted against the assets of a failed bank." *Id.* (emphasis added). In *Royal Bank of Canada v. FDIC*, 733 F.Supp. 1091 (N.D.Tex. 1990), a district judge reached the same conclusion: "A claim for attorney's fees *may be asserted against the assets of a failed bank only where such fees are specified in the parties' contract* or where there is a collateral fund from which they can be recovered." *Id.* at 1099 (emphasis added). Although a few elderly cases do not recognize the contract exception,[8] we believe that *Interfirst* and *Royal Bank* state the current law and consequently control our decision here.

Our decision to reject RTC's policy arguments is bolstered by a line of cases involving officer liability insurance policies: *FDIC v. Aetna Cas. & Sur. Co.*, 903 F.2d 1073 (6th Cir.1990); *FDIC v. Zaborac*, 773 F.Supp. 137 (C.D.Ill.1991); *American Cas. Co. v. Baker*, 758 F.Supp. 1340 (C.D.Cal.

tions described in subparagraph (A) or the assets of such institutions;

(ii) minimizes the impact of such transactions on local real estate and financial markets;

(iii) makes efficient use of funds obtained from the Funding Corporation or from the Treasury;

(iv) minimizes the amount of any loss realized in the resolution of cases; and

(v) maximizes the preservation of the availability and affordability of residential real property for low- and moderate-income individuals.

12 U.S.C.A. § 1441a(b)(3)(C) (West Supp.1992).

**8.** The primary case precluding the recovery of fees even where they were provided for by contract is *Citizens' Bank & Trust Co. v. Thornton*, 174 F. 752 (5th Cir.1909). In that case, the Fifth Circuit refused to enforce a contractual term providing for attorneys' fees in the event of a default. It reasoned that providing fees would place that creditor ahead of others who had failed to contract for fees and would displace the general law of costs and of winding up insolvent banks. *Id.* at 762. The court also found that the default occurred during a period in which the regulators were not permitted to pay the debt. The court apparently believed that it would be unfair to permit recovery where the default was caused by the receiver. *Id.* at 763. We believe that insofar as *Citizens' Bank* runs contrary to *Interfirst*, it has been overruled by that more recent case.

1991); *Continental Cas. Co. v. Allen,* 710 F.Supp. 1088 (N.D.Tex.1989). *Aetna Casualty* is illustrative. In *Aetna,* the FDIC (RTC's predecessor) challenged certain exclusions in a bankers bond (which covered losses caused by dishonest employees) that provided that coverage terminated if the institution was taken over by regulators. The FDIC's arguments were virtually identical to those made here by RTC: the court should invalidate the exclusions because they violate the public policy favoring the regulator's marshalling and maximizing the assets of an insolvent institution.

The *Aetna* court followed the principles laid out in *Muschany.* It found that the dominate public policy existing in the law was "that the parties' freedom of contract must not be disturbed" and that, absent clear manifestation of a policy invalidating the exclusions, it had to uphold them. *Id.* at 1078–79. Unable to find such a policy invalidating the exclusions, the court rejected the FDIC's argument and upheld the exclusions. *Aetna* and the related cases cited above, all suggest that we ought not refuse to enforce Paragraph 3 against the RTC on the grounds of public policy.

### 2. *Does the Contractual Provision Violate FIRREA?*

■ RTC's alternative argument is that the contractual fee and cost provisions are unenforceable because they violate 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e). Section 1821(d)(9)(A) merely stipulates that agreements that fail to meet the requirements set forth in Section 1823(e) cannot form the basis for "a claim against the receiver or the Corporation." Therefore, our focus is on Section 1823(e).

Section 1823(e) is, as many courts have recognized, the statutory codification of the rule enunciated in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), prohibiting the enforcement of so-called "secret agreements" against the FDIC when it is carrying out its statutory-mandated duties to protect depositors. *See Howell v. Continental Credit Corp.,* 655 F.2d 743, 746 (7th Cir.1981) (discussing the purpose of the statute);

*FDIC v. O'Neil,* 809 F.2d 350, 353 (7th Cir.1987) (same). As the Seventh Circuit has explained:

> The purpose behind section 1823(e), enacted in 1950, is to enable the FDIC, in deciding how to proceed with respect to a troubled bank, to make a quick and certain inventory of the bank's assets. It can do that only if it can disregard secret oral agreements that may impair the value of those assets.

*O'Neil,* 809 F.2d at 353. To this end, section 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). RTC asserts that Heinhold's Customer Agreement with Commonwealth failed to satisfy the requirement that the agreement be approved by the board or its loan committee and that such approval appear in the minutes of the board or committee.

■ The Seventh Circuit, however, has recognized that this statutory bar to unrecorded side agreements does not apply where the agreement in question "facially manifests *bilateral* obligations." *Howell,* 655 F.2d at 746 (emphasis in original); *see also O'Neil,* 809 F.2d at 354 (discussing *Howell*). In *Howell,* a lessee of various items of equipment sued the lessor, Conti-

nental Credit Corporation, *inter alia* to have the leases determined to be void. The FDIC, which had taken over Continental Credit, intervened and counterclaimed for amounts due under the lease. The lessee defended on the basis that the original lessor had failed to provide adequate consideration, namely to obtain title to the equipment that the lessee was to lease. The district court had found that the leases contained no explicit obligation of Continental to obtain title to the equipment, hence it had granted summary judgment in the FDIC's favor because such an obligation could only constitute a "secret agreement" of the sort barred by section 1823(e).

The Seventh Circuit reversed. The court of appeals began its discussion by examining section 1823(e) and the numerous cases in which the failure to satisfy the requirements of section 1823(e) demolished a defense based on a side agreement. It then explained why it declined to follow this precedent:

> In all of these cases, however, the FDIC was seeking to enforce a facially valid note or guarantee imposing a unilateral obligation on the maker to pay a sum certain amount to the bank. As stated previously, the makers' defenses were founded entirely upon separate and undisclosed agreements. We believe these holdings are inapplicable, therefore, where the document the FDIC seeks to enforce is one, such as the leases here, which facially manifests *bilateral* obligations and serves as the basis of the lessee's defense....
>
> The leases here involved clearly manifest the bilateral nature of the lessee's and lessor's rights and obligations.... This is not a case such as *D'Oench* and its progeny where the maker's defense depended solely upon a secret or unrecorded agreement, usually oral, of which the FDIC could have had no notice. The defense appellant posits here arises di-

rectly and explicitly from the provisions of the leases which were in the bank's files and which the FDIC now seeks to enforce.

655 F.2d at 746–47 (emphasis in original).

Our case is analogous to *Howell,* for here the contract at issue (the Customer Agreement) facially manifests bilateral obligations: Heinhold agreed to engage in certain activities on behalf of Commonwealth, which in turn (in Paragraph 3) assumed the obligation of paying Heinhold if it sued the firm and lost. As in *Howell,* the federal regulator attempted to enforce the contract—in our case by suing for breach—and now refuses to honor the contractual obligations it assumed at becoming receiver. We follow *Howell,* therefore, in finding that where the RTC has attempted to enforce a contract that facially manifests bilateral obligations, it cannot later attempt to resist its own obligations under that contract by invoking section 1823(e).

We find, therefore, that Heinhold is entitled to recover from the RTC[9] the attorneys' fees and cost that it expended in defending itself against the suits brought by Commonwealth. Because we find a contractual basis for recovery of these defense costs, we need not address Heinhold's alternative argument that it is entitled to fees pursuant to the Equal Access to Justice Act.

## II

## HEINHOLD'S MOTION TO DETERMINE PRIORITY

Heinhold moved for a determination that its claim for attorneys' fees and costs against the RTC as receiver for Commonwealth Federal is a first priority unsecured claim pursuant to 12 C.F.R. § 360.2(a)(1). This section provides that "[a]dministrative expenses of the receiver, including the costs, expenses, and debts of the receiver" take first priority over other unsecured

---

9. We find that the costs and fees to which Heinhold is entitled are not chargeable to the General Accounting Office, as Heinhold claims. Because we award Heinhold these fees pursuant to contract, not the Equal Access to Justice Act, 28

U.S.C. §§ 1920 and 2412 are not applicable. Hence, Heinhold may recover only from RTC in its capacity as receiver for Commonwealth Federal.

claims. 12 C.F.R. § 360.2(a)(1). We agree with Heinhold that the fees and costs to which it is entitled pursuant to Paragraph 3 constitute administrative expenses of the RTC and thus must receive first priority.

We note as an initial matter that we could find no cases interpreting "administrative expenses" pursuant to section 360.-2(a)(1). Heinhold's analogy to bankruptcy law, however, is instructive. Title 11, Section 503(b)(1)(A) of the United States Code provides that the actual, necessary costs and expenses of preserving the estate constitute administrative expenses, and 11 U.S.C. § 507(a)(1) requires that these expenses be given first priority status. *See In re G.I.C. Gov't Sec.*, 121 B.R. 647, 648 (Bankr.M.D.Fla.1990). In *In re G.I.C.*, the Trustee filed a complaint against E.F. Hutton. The Trustee eventually lost on appeal, and E.F. Hutton—as the prevailing party—filed a bill of costs and requested that it be given first priority. Reasoning that the suit instituted by the Trustee against E.F. Hutton was an attempt to benefit and preserve the property of the estate, the court concluded that

> [b]ut for the suit commenced by the Trustee, E.F. Hutton would not have incurred these costs. Therefore, this Court is satisfied that these costs are properly chargeable against the estate as costs of administration. The fact that the Trustee was not ultimately successful in the suit against E.F. Hutton does not change this result.

*Id.* at 649. Although the bankruptcy statutes involved in *In re G.I.C.* are not identical to the regulatory provision covering the prioritization of unsecured claims against the RTC, we believe that this case is persuasive authority nevertheless.

As did the Trustee in *In re G.I.C.*, RTC pursued Commonwealth's claim against Heinhold as a way of maximizing the assets of the failed thrift. RTC's own fees and costs incurred in pursuing this suit certainly are entitled to priority. We can find no basis on which to distinguish these litigation costs from those chargeable to it pursuant to Paragraph 3. As Heinhold aptly points out, its attorneys' fees and costs are nothing more nor less than a cost of litigation that RTC determined was worth pursuing. Just as RTC had to pay its own legal and expert fees and associated costs for pursuing the litigation, it also undertook to pay Heinhold's fees and costs if Heinhold prevailed. Hence, we grant Heinhold's motion and determine that its claim for attorneys' fees and costs is a first priority "administrative expense" pursuant to 12 C.F.R. § 360.2(a)(1).

### CONCLUSION

For the foregoing reasons, we grant Heinhold's Motion for Attorneys' Fees and Costs in part insofar as we find that it is entitled to these fees and costs pursuant to its contract with Commonwealth. We will determine the amount of fees and costs to be awarded after the parties have had an opportunity to brief that issue. We also grant Heinhold's Motion to Determine Priority.