

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-1996

# Resolution Tr. Corp. v. W.W. Dev. & Mgmt, Inc.

Precedential or Non-Precedential:

Docket 95-1227

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Resolution Tr. Corp. v. W.W. Dev. & Mgmt, Inc." (1996). *1996 Decisions.* Paper 247.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/247

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 95-1227 and 95-1228


RESOLUTION TRUST CORPORATION IN ITS CAPACITY
AS CONSERVATOR FOR BELL FEDERAL SAVINGS BANK

v.

W.W. DEVELOPMENT & MANAGEMENT, INC.

> W.W. Development and Management
> Company,

> Appellant


W.W. DEVELOPMENT & MANAGEMENT, INC.

v.

THE RESOLUTION TRUST CORPORATION, IN ITS CAPACITY
AS RECEIVER FOR BELL SAVINGS BANK, PaSA

> W.W. Development and Management
> Company,

> Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action Nos. 91-3788 and 93-4210)


Argued December 5, 1995

BEFORE: GREENBERG and MCKEE, Circuit Judges, and
ACKERMAN, District Judge*

(Filed:  January 16, 1996)


1

Edward H. Rubenstone
William Goldstein (argued)
Elliot Alan Kolodny
Groen, Laveson, Goldberg and Rubenstone
Four Greenwood Square
Suite 200
P.O. Box 8544
Bensalem, PA 19020

Attorneys for Appellant

Michael R. Latowski (argued)
Saul, Ewing, Remick & Saul
3800 Centre Square West
Philadelphia, PA 19102

Sophia Ranalli
Resolution Trust Corporation
P.O. Box 1500
Valley Forge, PA 19482-1500

Douglas Konselman
1717 "H" Street N.W., Room 3116
Washington, D.C. 20434

Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This case requires us to consider the application of the jurisdictional bar in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") to the judicial adjudication of claims when the claimant has not complied with

FIRREA's claims procedures.[0] Bell Savings Bank, PaSA ("Bell") confessed judgment in a Pennsylvania state court against W.W. Development and Management Company ("W.W.") following W.W.'s default on a $500,000 loan. After the Director of the Office of Thrift Supervision, Department of the Treasury, declared Bell insolvent and appointed the Resolution Trust Corporation ("RTC") its conservator and then its receiver, W.W. filed: (1) a petition to open the judgment, offering defenses and a counterclaim in the state court action which the RTC subsequently removed to a federal court and, after the administrative claims period passed, (2) a separate action restating the same claims in federal court. The district court denied the petition in the first case and granted summary judgment to the RTC in the second case, as it held that it lacked subject matter jurisdiction over W.W.'s claims in both cases as a result of FIRREA's jurisdictional bar. For reasons that we explain below, we will affirm the district court's order as to its conclusion that it lacked subject matter jurisdiction over the second lawsuit and over W.W.'s counterclaim in the first. We, however, will vacate the district court's order to the extent that it rejected jurisdiction over W.W.'s defenses to liability in W.W.'s petition to open judgment.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The two cases arose from a loan and a loan commitment agreement between Bell and W.W. for financing W.W.'s development

---

[0]Pub. L. No. 101-73, 103 Stat. 183 (1989).

3

of a medical office condominium in Philadelphia, Pennsylvania. W.W.'s App. 54. Initially, Bell loaned W.W. $500,000 on August 20, 1987. Id. at 45. In the loan documents, W.W. authorized Bell to confess judgment against it in the amount of the loan plus interest if W.W. defaulted. Id. at 43. On September 6, 1988, Bell agreed to loan W.W. $3,314,000 for further development of the property. This commitment was valid until October 30, 1988. Id. at 121-28. W.W. planned to use part of this loan to pay off the earlier loan of $500,000. Id. at 91. On October 3, 1988, the parties extended the commitment date on the $3,314,000 loan until April 30, 1989. Id. at 95. Bell, however, did not make this additional loan to W.W. which then defaulted on the earlier $500,000 loan. Bell then confessed judgment against W.W. in the amount of $529,883.43 on June 13, 1990, in the Court of Common Pleas of Philadelphia County. Id. at 40-50.

On March 15, 1991, the Director of the Office of Thrift Supervision found that Bell was likely to incur losses as a result of unsafe and unsound practices and appointed the RTC its conservator.[0] As a result, under 12 U.S.C. § 1821(d)(2)(A)(i), the RTC succeeded to "[a]ll rights, titles, powers and privileges" of Bell. Four days later, on March 19, 1991, the director appointed the RTC Bell's receiver. The RTC then published notice that all creditors having claims against Bell

---

[0] Order No. 91-163. RTC's App. 4. After Bell Savings Bank was taken over the RTC organized Bell Federal Savings Bank to acquire Bell's assets. As a matter of convenience we refer simply to Bell as a single institution.

4

must submit them by June 22, 1991, but it later extended this time, at least as to W.W., until September 27, 1991.

On March 26, 1991, W.W. filed a petition to open the confessed judgment in the Philadelphia County Court of Common Pleas, alleging that Bell's breach of its commitment on the proposed $3,314,000 loan caused W.W. to default on the $500,000 loan. In addition, W.W. sought to assert a counterclaim for damages from Bell's breach. W.W.'s App. 51-60.[0]

On April 24, 1991, the RTC removed the state court proceedings, including the judgment and the petition to open the judgment, to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1331 and 1441(a) and 12 U.S.C. § 1441a(l)(3).[0] W.W.'s App. 96. Thus, we will refer to this

---

[0] We accept W.W.'s representation that it was unaware that Bell was in receivership at this time. We observe, however, that this circumstance has no legal significance. We will refer to W.W.'s defenses and counterclaim as if they have been filed even though its petition merely sought permission to file them. W.W.'s Br. at 6.

[0] 12 U.S.C. § 1441a(l)(3) reads:

(3) Removal and remand

(A) In general

The Corporation, in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the Corporation has been appointed conservator or

5

case as the removed case.  On May 18, 1991, the District of Columbia court transferred the removed case to the Eastern District of Pennsylvania.  W.W.'s App. 101.

On August 5, 1991, shortly before the deadline for the filing of claims under FIRREA against the RTC as receiver for Bell, counsel for W.W. wrote a letter to the RTC's counsel advising him of the pending petition to open judgment and of W.W.'s claims against the RTC.  The letter stated:

> As you are aware, . . . the Motion to Open Judgment that is presently pending, in addition to setting forth grounds to open the judgment and defenses against that judgment, includes claims for damages incurred as a result of the subject breach by Bell of its Agreement to loan sufficient funds to W.W. Development. . . .
>
> I assume that, given the fact that RTC is in receipt of these claims, no further filings are required by my client in order to permit RTC to determine these claims pursuant to 12 U.S.C. Sec. 1821(d)(5). If this assumption is incorrect, I would appreciate your prompt advice and would further appreciate your

receiver if the action, suit or proceeding is brought against the institution or the Corporation as conservator or receiver of such institution.  The removal of any such suit or proceeding shall be instituted–

(i) not later than 90 days after the date the Corporation is substituted as a party, or

(ii) not later than 30 days after service on the Corporation, if the Corporation is named as a party in any capacity and if such suit is filed after August 9, 1989.

> providing me with any forms which should be
> completed by my client in order to obtain
> review and determination by RTC of these
> claims.  Your prompt advice would be most
> appreciated and in the event I do not hear
> from you to the contrary, I will assume that
> the presentation of the claims of my client
> in the Motion to Open Judgment are sufficient
> to permit the RTC to administratively
> determine such claims.

W.W.'s App. 156-157.  There is some dispute as to whether the RTC responded to this letter but we will assume in accordance with W.W.'s contention that it did not.[0]  In any event, W.W. did not file a formal claim with RTC within the period for filing claims even as extended to September 27, 1991.

On September 15, 1992, almost one year after the time to file a formal claim had expired, and after counsel suggested that the proceedings in the removed case be postponed, the court referred that case to a magistrate judge to explore settlement. Upon joint request of the parties, the district court suspended the proceedings on the petition to open the judgment for five months on September 22, 1992.  Id. at 108.  Finally, on October 7, 1992, W.W. filed a formal proof of claim with the RTC.  On June 8, 1993, the RTC denied W.W.'s October 7, 1992 administrative claim on the ground that W.W. did not return an official claim form before the deadline for filing claims.  In the letter denying the claim and explaining the bar, the RTC

---

[0] W.W.'s counsel claims that he did not receive a reply to the letter.  RTC's counsel states that the RTC sent W.W. a claims form on August 27, 1991, though W.W. did not return the completed claims form until after the deadline.  Our assumption does not prejudice the RTC because the relief we are granting W.W., i.e., that it may assert its defenses to the complaint resulting in the judgment by confession, does not depend on it.

7

stated that W.W. could file suit within 60 days from the date of the letter.  Id. at 174-75.

On August 5, 1993, within that 60-day period, W.W. filed the second action, which we will call the federal case, against the RTC in its capacity as receiver for Bell, alleging that Bell's failure to adhere to its loan commitment caused W.W. damages of $2,996,150.  This federal case essentially restated W.W.'s claims in its petition to open judgment.  On June 20, 1994, the court transferred the petition to open judgment in the removed case to its current docket.  Id. at 109.

The RTC then moved for summary judgment in the federal case, arguing that the district court lacked subject matter jurisdiction under 12 U.S.C. § 1821(d)(5)(C)(i)[0] since W.W. did not file an official claim form until after the bar date of September 27, 1991.  W.W.'s App. 136.  W.W. filed a cross-motion for partial summary judgment declaring that it had filed a timely administrative claim.  The district court rejected the RTC's argument, reasoning that the petition to open, filed on March 26, 1991, and served on the RTC in April 1991, coupled with W.W.'s

---

[0]12 U.S.C. § 1821(d)(5)(C)(i) reads in relevant part:

> (C) Disallowance of claims filed after end of filing period
>
> > (i) In general
> >
> > Except as provided in clause (ii), claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.

8

letter of August 5, 1991, requesting notification if its administrative claim was incomplete, constituted a sufficient and timely administrative claim. Id. at 22-25. As a result, the district court on July 15, 1994, denied the RTC's motion for summary judgment and granted W.W.'s cross-motion for partial summary judgment establishing that its claim was timely. Id. at 26.

The RTC then filed a motion for reconsideration on the grounds that if W.W's claim was considered filed by August 5, 1991, as the district court had held, then under 12 U.S.C. §1821(d)(5)(A)(i),[0] the claim was deemed denied as a matter of

---

[0] 12 U.S.C. § 1821(d)(5)(A)(i) reads in relevant part:

> (5) Procedures for determination of claims
>
> > (A) Determination period
> >
> > > (i) In General
> > >
> > > Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.
> > >
> > > (ii) Extension of time
> > >
> > > The period described in clause (i) may be extended by a written agreement between the claimant and the Corporation.
> > >
> > > (iii) Mailing of notice sufficient
> > > . . . .

law on February 3, 1992, the end of the 180-day period in which the RTC should have acted on the claim. Thus, in the RTC's view, W.W. was required to have filed its district court action within 60 days of February 3, 1992 (i.e., on or before April 4, 1992) under 12 U.S.C. § 1821(d)(6)(B).[0] The RTC argued that since W.W. did not file the federal case until August 5, 1993, the district court lacked subject matter jurisdiction over it. W.W.'s App. 31-34. The district court agreed and granted the RTC's motion for summary judgment on November 17, 1994. Id. In the same order, the district court denied W.W.'s petition to open judgment in the removed case on the grounds that W.W. filed the petition after Bell was placed in receivership. Consequently, the court held that it lacked jurisdiction because W.W. did not properly exhaust its claims administratively before filing the petition. After the district court, on February 27, 1995, denied W.W.'s

---

(iv) Contents of notice of disallowance

If any claim filed under clause (i) is disallowed, the notice to the claimant shall contain-

(I) a statement of each reason for the disallowance; and

(II) the procedures available for obtaining agency review of the determination to disallow the claim or judicial determination of the claim.

[0]The RTC used the April 4, 1992 date in its brief. It appears that the correct date was April 3, 1992. Of course, the difference does not matter.

10

motion for reconsideration, W.W. appealed in both cases from the orders of November 17, 1994, and February 27, 1995.

## II. DISCUSSION

This court has jurisdiction pursuant to 28 U.S.C. §1291 because W.W. filed a timely notice of appeal on March 22, 1995. Because the subject matter jurisdiction of the district court is the central issue in the case, we discuss it below. We exercise plenary review on this appeal. See Petruzzi's IGA Supermarket, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir.), cert. denied, 114 S.Ct. 554 (1993).

Congress enacted FIRREA in 1989 in response to the massive losses occurring in the nation's savings and loan institutions and the deposit insurance fund protecting their depositors. H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 1, 302, reprinted in 1989 U.S.C.C.A.N. 86, 98. In its report on FIRREA, Congress projected that the full cost of the thrift crisis would be more than $335 billion, noting, to give some perspective, that this expenditure would dwarf the $13.3 billion cost of the entire post-World War II Marshall Plan to reconstruct Europe. Id. at 514. Congress also expressed concern that higher-than-expected costs for case resolution could boost that figure. Id. at 515. To restore consumer confidence in the failed savings and loan industry and resolve the crisis, Congress granted the receivers of failed institutions broad powers to administer a streamlined claims procedure designed to dispose of the bulk of claims against failed savings and loans. Id. at 305,

11

419. Congress also designed FIRREA to be consistent with the Supreme Court's holding in <u>Coit Independence Joint Venture v. FSLIC</u>, 489 U.S. 561, 109 S.Ct. 1361 (1989), which dealt with the procedure for filing claims against the Federal Savings and Loan Insurance Corporation.  H.R. Rep. No. 101-54(I) at 418-19.[0]

On this appeal, we are concerned with FIRREA's complex and, in practice, draconian jurisdictional provisions which, as we explain below, we must apply as written.  In brief, Congress requires the RTC to notify claimants to submit their claims on or before a date at least 90 days from the date of publication of the notice.  Once they do so, the RTC has 180 days to allow or disallow their claims.  Claimants thereafter have 60 days from the earlier of the end of the 180-day period or the notice of denial of their claims to seek de novo judicial review.  No court has jurisdiction to hear any suit filed after this 60-day period against the RTC as receiver for a failed thrift.

Actions filed prior to institution of FIRREA proceedings may be stayed at the request of a conservator or receiver.  If a claimant then submits a claim and it is denied or the 180-day period expires without a claim being allowed or

---

[0]In <u>Coit</u>, the Court held that the Federal Savings and Loan Insurance Corporation, the RTC's predecessor with respect to failed thrifts, under pre-FIRREA law, did not have exclusive authority to adjudicate claims filed against failed savings and loan institutions and that a claimant was entitled to a de novo review of the corporation's disposition of a claim in the district court.  489 U.S. at 587, 109 S.Ct. at 1376.  The Court noted, however, that requiring exhaustion of the claim process would be permissible if the claim process included a reasonable time limit on the corporation's ability to postpone judicial review.  <u>Id.</u> at 584, 109 S.Ct. at 1374.

disallowed, claimants have 60 days to continue their pre-receivership actions.[0]  With this plan, Congress hoped to promote expeditious and fair adjudication of the many claims against the failed thrifts.

The central issue in this case is whether W.W.'s actions are jurisdictionally barred under FIRREA and thus whether the district court's dismissal of the actions was proper.

## I. The federal case

We first will consider whether the district court had jurisdiction over the federal case which W.W. filed on August 5, 1993, after the RTC rejected its formal claim.  We held in Rosa v. RTC, 938 F.2d 383 (3d Cir.), cert. denied, 502 U.S. 981, 112 S.Ct. 582 (1991), that a district court has subject matter jurisdiction over a claim under FIRREA only if the claimant exhausts the statutory claim procedure.  Id. at 391–92, 396–97. See also Althouse v. RTC, 969 F.2d 1544, 1545–46 (3d Cir. 1992) (holding that failure to file timely claim precludes jurisdiction and de novo review by district court); FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991) (holding that courts have no jurisdiction over claims besides that specified in FIRREA).  Our conclusion in Rosa follows from 12 U.S.C. §1821(d)(13)(D), which states:
  (D) Limitation on Judicial Review

---

[0]In Praxis Properties, Inc. v. Colonial Sav. Bank, 947 F.2d 46, 63 n.14 (3d Cir. 1991), we pointed out that FIRREA in some respects is unclear as to its treatment of a claimant's action filed before the institution of FIRREA proceedings.  We need not explore that problem here because W.W. filed its first pleading, its petition to open judgment, after the RTC was appointed receiver.

Except as otherwise provided in this subsection, no court shall have jurisdiction over–

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

To determine whether the district court has jurisdiction over the controversy, we look to whether W.W. followed the statutory claim procedure. This procedure is set out at 12 U.S.C. § 1821(d)(6)(A), which reads:

(6) Provision for agency review or judicial determination of claims

(A) In general

Before the end of the 60-day period beginning on the earlier of–

(i)the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's

14

principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

The "period described in paragraph (5)(A)(i)" is the 180-day period during which the RTC is required to determine whether to allow or disallow the claim and notify the claimant of its determination. The parties can extend this period only upon their written agreement.[0] Absent written agreement to extend the 180-day period, a claimant must seek judicial review before the earlier of 60 days from the determination of its claim or 240 days from the date its claim was filed (the 180 days of section 1821(d)(5)(A)(i), plus the 60 days of section 1821(d)(6)(A)) even if, as in this case, the RTC fails to make a determination within the statutorily required 180-day period specified in section 1821(d)(5)(A)(i).[0] Astrup v. RTC, 23 F.3d 1419, 1420-21 (8th Cir. 1994); Capitol Leasing Co. v. FDIC, 999 F.2d 188 (7th Cir. 1993); Henderson v. Bank of New England, 986 F.2d 319, 320 (9th Cir., cert. denied, 114 S.Ct. 559 (1993).

In this case, treating W.W.'s petition to reopen in the removed case and its counsel's August 5, 1991 letter to RTC's counsel as together constituting a properly filed claim, W.W.

[0]12 U.S.C. § 1821(d)(5)(A)(ii).
[0]Congress clearly contemplated the possibility of the 180-day period expiring without the RTC having resolved a claim, for section 1821(d)(6)(A) states that a claimant has 60 days after the expiration of the 180-day claim determination period or the disallowance of a claim to seek administrative review or to institute an action in court. If Congress had not contemplated the possibility of the 180-day period expiring without the RTC having resolved a claim, the first limitation period would have been superfluous, since there never would be an instance in which the 180-day period would expire without the resolution of a claim.

15

failed to bring the federal case in the district court within the statutorily-specified time period. The district court held that W.W. provided the RTC with the information necessary to process its claim in April 1991 when it served its March 26, 1991 petition to open (filed in the Philadelphia County Court of Common Pleas) on the RTC. At the latest, treating these informal filings, i.e., the petition and the letter, as satisfying the requirement to file an administrative claim, the 240-day period began in August, after W.W. sent the RTC the letter requesting adjudication of its claim.[0]  Yet W.W. did not file the federal case until August 5, 1993. Since more than 240 days elapsed between the filing of the claim with RTC and the filing of the federal case in the district court, the district court lacked subject-matter jurisdiction over it.

---

[0]The RTC contends that service of the petition did not constitute a properly filed claim and that FIRREA bars W.W.'s action because it did not file an appropriate claim form within 90 days of receiving notice to do so, as required by 12 U.S.C. §1821(d)(5)(C)(i).  If the RTC is correct so that W.W.'s petition, either independently or accompanied by its letter of August 5, 1991, did not constitute a claim, the district court would have lacked jurisdiction because W.W. would not have followed the proper administrative procedures.

Nevertheless, since we find that even if a pleading can constitute a claim under FIRREA, the district court lacked jurisdiction over this claim, we need not address this issue. We therefore assume without deciding that the procedures W.W. followed in 1991 constituted compliance with the FIRREA claims procedure. Of course, the petition could not be an adequate claim in the removed case itself, because FIRREA contemplates an administrative claim procedure independent of a judicial proceeding. Treating the petition as an adequate administrative filing to support jurisdiction in the removed case would frustrate the two-step process FIRREA contemplates.

W.W. argues that the court possessed jurisdiction over the federal case because there was a written agreement, pursuant to 12 U.S.C. § 1821(d)(5)(A)(ii), to extend the 180-day period in which the RTC was required to resolve W.W.'s claims. W.W. argues that: (i) motions to the district court to stay the removed case constitute written agreements between the RTC and W.W., and (ii) that the RTC's denial of W.W.'s October 7, 1992 claim on June 8, 1993, in explicitly granting W.W. 60 days to appeal, also constitutes a written agreement, albeit a retroactive one, to extend the 180-day period for consideration of its 1991 claim. Thus, in W.W.'s view, its action filed August 5, 1993, was timely. Alternatively, W.W. argues that material written by the RTC after the expiration of the 180-day period should extend retroactively the 180-day period.[0]

---

[0] W.W. cites a letter to the district court dated February 9, 1993, which states:

> On or about October 5, 1992, after the case was placed in the suspense file, defendant W.W. Development & Management, Inc. submitted an administrative claim to the Resolution Trust Corporation pursuant to 12 U.S.C. §1821(d)(5). Pursuant to Section 1821(d) the claim must be decided within 180 days of filing (i.e., on or about April 3, 1993). Accordingly, we request that the matter remain in the suspense file until April or until the claim has been decided, whichever is earlier. Of course if the claim is decided before April 3, we will promptly notify the Court. Edward Rubenstone, counsel for defendant, joins in this request.

W.W.'s App. 173.

When the RTC denied W.W.'s claim on June 8, 1993, its letter to W.W. stated:

17

To support its contentions, W.W. points out that section 1821(d)(5)(A)(ii) provides that the 180-day period, "may be extended by a written agreement between the claimant and the Corporation." On June 24, 1991, the RTC filed a motion to stay all legal proceedings in the removed case. It read in part:

> For the reasons set forth in the following Memorandum of Law, substituted plaintiff Resolution Trust Corporation, in its capacity as Conservator for Bell Federal Savings Bank, moves the Court for an Order staying consideration of defendant's Motion to Open Judgment pending exhaustion of administrative remedies.

W.W.'s App. 106-07. On August 14, 1991, W.W. filed a Memorandum of Law in response which argued, in part, that the district court should stay further proceedings for 180 days so that administrative procedures could be exhausted. It read in part: "under the facts of this case . . . the issuance by this Court of a stay for 180 days as to the prosecution of such claims is appropriate." W.W.'s App. 197.

W.W. further argues that Congress intended the deadline provisions to constrain only the RTC and it suggests that Congress drafted them in response to the concerns raised by the Supreme Court in <u>Coit Independence Joint Venture v. FSLIC</u>, 489 U.S. at 582-83, 109 S.Ct. at 1373, where the Court noted that the

> Pursuant to 12 U.S.C. Section 1821(d)(6), if you wish to contest this disallowance, then, within sixty (60) days from the date of this letter you must file suit on your claim against the Receiver in the United States District Court for the Eastern District of Pennsylvania . . . .

<u>Id.</u> at 175.

18

lack of deadline periods enabled the Federal Savings and Loan Insurance Corporation to delay judicial review indefinitely. W.W. argues that the legislative history offers no support for the RTC's use of the deadline procedures to defeat a claim.  It further argues that allowing the RTC to evaluate claims even after the 180-day period has elapsed would serve the purpose of FIRREA.[0]

When a statute is clear, however, our role in interpretation is at an end, absent a clearly expressed legislative intention that contradicts the plain language of the statute.  Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056 (1980); Sacred Heart Medical Center v. Sullivan, 958 F.2d 537, 545 (3d Cir. 1992). Nothing that W.W. cites is "a written agreement between the

---

[0]The legislative history explains that the claims procedure set forth in FIRREA was designed:

> [To enable] the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly.  The exhaustion requirements should lead to a large number of claims being resolved without resort to further procedures.  In addition, the administrative procedures, including review procedures, created by the FDIC, if made sufficiently attractive to claimants, should lead to a large number of claimants agreeing to present their claims through these forums rather than in court.  Thus, the claim resolution process established in this section should allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts.

H.R. Rep. No. 101-54 (I) at 419.

19

claimant and the Corporation" to extend the 180-day period. Furthermore, W.W. cannot point to "a clearly expressed legislative intention" that contradicts the plain language of the statute and thus would allow us to treat the items to which it points as an agreement for an extension of the 180-day claim consideration period.  GTE Sylvania, 447 U.S. at 108, 100 S.Ct. at 2056.  Consequently, we cannot find that the 180-day claim period was extended to permit the district court to exercise jurisdiction over the federal case.[0]

We recognize that our result is harsh.  The RTC disallowed the claim on the basis of untimeliness despite W.W.'s good faith efforts and request for guidance from the RTC to comply with the new and confusing statute.  In addition, the RTC's actions encouraged W.W. to believe that its claim was under serious administrative consideration as the statutory period for judicial review expired.  Furthermore, we acknowledge that "[t]he statute arguably encourages the RTC to avoid making determinations and, in so doing, catch creditors dozing." Astrup,

---

[0]Of course, the claim W.W. filed on October 7, 1992, was late so even if there had been a written agreement to extend the time for the receiver to allow or disallow the claim to June 8, 1993, when the RTC disallowed the claim, which as far as we are aware there was not, the district court would have granted the RTC summary judgment properly as W.W. filed the claim long after the bar date.  We must say, however, that we are at a loss to understand why the RTC in its June 8, 1993 letter advised W.W. that it could file suit within 60 days, inasmuch as the RTC denied the October 7, 1992 claim long after 180 days following its submission.  It would seem that the RTC was attempting to give the district court jurisdiction which the court did not have.  It may be that on this basis as well the district court, notwithstanding the June 8, 1993 letter, did not have jurisdiction.  But we do not reach that point.

20

23 F.3d at 1421. But our hands are tied under the statutory scheme. See also National Union Fire Ins. Co. v. City Sav. Bank, F.S.B., 28 F.3d 376, 388 (3d Cir. 1994) ("FIRREA was . . . passed to give the receiver extraordinary power."). We therefore hold that the district court did not have jurisdiction over the federal case.

## II. The removed case

W.W. also argues that the district court had jurisdiction in the removed case over the petition to open the judgment and to allow it to assert defenses and a counterclaim. The relevant facts are that Bell filed its action for confession of judgment before the RTC was appointed receiver for Bell but that W.W. filed its petition after that appointment.

FIRREA, though allowing the RTC to remove state cases to a federal court, does not generally divest courts of jurisdiction in pre-receivership cases. This is clear from 12 U.S.C. § 1821(d)(5)(F)(ii), which provides, with an exception dealing with stays, that filing a claim with a receiver does not prejudice the right of a claimant to continue an action filed before the receiver's appointment. It necessarily follows from this section that the institution of a proceeding under FIRREA does not oust a court of the jurisdiction it otherwise would have over an action involving a thrift institution. Accordingly, in Praxis Properties, Inc. v. Colonial Sav. Bank, 947 F.2d 49, 63 n.14 (3d Cir. 1991), we explained that if an action is filed before a thrift is placed in receivership, jurisdiction over the

21

matter is not lost by the subsequent insolvency of the thrift and takeover by the RTC.  Id.

Bell commenced the removed action by confessing judgment against W.W.[0]  In National Union, 28 F.3d 393, we held that section 1821(d)(13)(D)'s statutory bar does not apply to either defenses or affirmative defenses to a claim brought by the RTC because:

> We think it plain enough that a defense or an affirmative defense is neither an 'action' nor a 'claim,' but rather is a response to an action or a claim, and that therefore defenses and affirmative defenses do not fall under any of the [categories of action barred by § 1821(d)(13)(D)].

See also Praxis, 947 F.2d 49, 64 n.14 (Neither exhaustion requirement nor administrative claims procedure apply to actions the thrift commenced before it failed.).

Consequently, we must decide whether the petition to open the judgment was a separate claim against the RTC or whether it should be regarded as defense and therefore not barred by section 1821(d)(13)(D).  Because the petition to open judgment includes both a defense to liability in the action commenced before the FIRREA proceedings (though not a conventional defense as in an action in which process is served at the outset), and a counterclaim against RTC, we will bifurcate the petition and separately consider the defenses and the counterclaim.[0]  This

---

[0]Of course, the district court had jurisdiction over the judgment and could have entertained enforcement proceedings for its collection.  Thus, we deal with W.W.'s pleadings, not those of the RTC.

[0]The petition itself is broken into three sections.  Section I is headed:

22

procedure is consistent with that which we followed in <u>National Union</u>, 28 F.3d at 383-95, where we separately considered whether FIRREA barred affirmative defenses and declaratory judgment actions even when both were based on the same legal grounds. We find that the defenses offered in the petition to open judgment are not subject to FIRREA's statutory bar, but that the counterclaim in the petition is jurisdictionally barred by FIRREA.

## A. <u>The defenses</u>

We first consider the defenses to the confessed judgment included in the petition to open the judgment. In deciding whether or not FIRREA bars jurisdiction over this part of the petition, we are guided by the Supreme Court's recent holding in <u>O'Melveny & Myers v. FDIC</u>, 114 S.Ct. 2048 (1994), which explained that "matters left unaddressed" in FIRREA "are

---

> As a Result of Bell's Breach of Contract and Other Wrongful Conduct, Petitioner has Numerous Bona Fide, Good Faith Defenses to Bell's Claims, Thereby Warranting the Opening of the Subject Judgment by Confession.

W.W.'s App. 54.

Section II is headed:

> Defendant has Incurred Substantial Damages as a Direct Result of Plaintiff's Breach of Contract, Thereby Entitling it to Assert a Counterclaim in this Action.

<u>Id.</u> at 57-59.

Section III requests an order staying the execution of the confessed judgment. <u>Id.</u> at 59-60.

23

presumably left subject to the disposition provided by state law." Id. at 2054. We thus consider how the petition would be viewed under Pennsylvania law.

In Pennsylvania, a petition to open a judgment is integral to the process of determining the debtor's and creditor's rights.[0] See Davis v. Woxall Hotel, Inc., 577 A.2d

---

[0] Pa. R. Civ. P. 2959 governs the procedure on a petition to open a judgment. While W.W. characterized its petition as a motion, inasmuch as that section refers to a petition, we have called the pleading a petition. The rule reads:

> Rule 2959. Striking Off or Opening Judgment; Pleadings; Procedure
>
> (a) Relief from a judgment by confession shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition. The petition may be filed in the county in which the judgment was originally entered, in any county to which the judgment has been transferred or in any other county in which the sheriff has received a writ of execution directed to him to enforce the judgment.
>
> (b) If the petition states prima facie grounds for relief the court shall issue a rule to show cause and may grant a stay of proceedings. After being served with a copy of the petition the plaintiff shall file an answer on or before the return day of the rule. The return day of the rule shall be fixed by the court by local rule or special order.
>
> (c) A party waives all defenses and objections which he does not include in his petition or answer.
>
> (d) The petition and the rule to show cause and the answer shall be served as provided in Rule 440.

24

636, 638 (Pa. Super. Ct. 1990) ("[A] challenge to the accuracy of such amounts should be resolved by a petition to open the judgment.").  Passed as part of the same chapter as the provision governing a confession of judgment, a petition to open a judgment is the sole means by which the defendant in a confession of judgment action can assert a defense.  If the party against whom judgment is confessed pleads prima facie grounds for relief, the court must open the judgment, and "may grant a stay of proceedings."  Pa. R. Civ. P. 2959(b).  The use of the word "proceedings" suggests that the petition should be understood as part of the same action as the underlying confession of judgment. This interpretation is strengthened by the Pennsylvania Superior Court's discussion:

> A petition to strike and a petition to open
> are two forms of relief with separate
> remedies; each is intended to relieve a
> different type of defect <u>in the confession of
> judgment proceedings</u>. . . . [A] petition to
> open the judgment offers to show that the
> defendant can prove <u>a defense</u> to all or part
> of the plaintiff's claim.

---

> (e) The court shall dispose of the rule on
> petition and answer, and on any testimony,
> depositions, admissions and other evidence.
> The court for cause shown may stay
> proceedings on the petition insofar as it
> seeks to open the judgment pending
> disposition of the application to strike off
> the judgment.  If evidence is produced which
> in a jury trial would require the issues to
> be submitted to the jury the court shall open
> the judgment.
>
> (f) The lien of the judgment or of any levy
> or attachment shall be preserved while the
> proceedings to strike off or open the
> judgment are pending.

25

<u>Manor Bldg. Corp. v. Manor Complex Assocs., LTD.</u>, 645 A.2d 843, 845 n.2 (Pa. Super. Ct. 1994) (emphasis added).  The court's reference to the petition to open as "a defense" in "confession of judgment proceedings" indicates that a defense to liability in a petition to open is part of an overall confession of judgment procedure and not an independent action.

Moreover, the Pennsylvania courts have noted the importance of a petition to open a judgment in satisfying due process in the confession of judgment procedure.  <u>North Penn Consumer Discount Co. v. Shultz</u>, 378 A.2d 1275, 1277-78 (Pa. Super. Ct. 1977).[0]  We find, therefore, that the defenses alleged in the petition to open judgment are part of a pre-receivership action and thus under sections 1821(d)(5)(F)(ii) and 1821(d)(13)(D) the district court may entertain them without regard for the jurisdictional bar in the latter section.

In reaching our result, we also point out that section 1821(d)(13)(D) bars jurisdiction only over "any claim or action for payment from, or any action seeking a determination of rights with respect to, <u>the assets of any depository institution</u> for

---

[0] We note that the Pennsylvania confession of judgment procedure has raised serious due process issues in the past.  <u>See Jordan v. Fox, Rothschild, O'Brian & Frankel</u>, 20 F.3d 1250 (3d Cir. 1994).  The existence of the opportunity to present a defense provided by the petition to open judgment may well be crucial to the constitutionality of the procedure.  <u>See</u> <u>Girard Trust Bank v. Martin</u>, 557 F.2d 386 (3d Cir.), <u>cert. denied</u>, 434 U.S. 985, 98 S.Ct. 612 (1977) (construing <u>D.H. Overmyer Co. v. Frick Corp.</u>, 405 U.S. 174, 92 S.Ct. 775 (1972), to seem to require that "there be some procedure by which debtor against whom judgment is confessed may test the validity of the judgment against him").  These concerns also support construing a petition to open judgment as part of the same action as a confession of judgment.

which the Corporation has been appointed receiver."  Id. (emphasis added).  We regard the defenses offered by W.W. in the petition to open judgment as pertaining to its assets, not those of Bell, because a judgment has value only insofar as it can be the basis for a recovery from a debtor's assets.

Finally, on this point we observe that at oral argument counsel for the RTC acknowledged that if a thrift filed an action before the Office of Thrift Supervision instituted proceedings to take it over under FIRREA, a defendant in that case after the initiation of the FIRREA proceedings could assert defenses without exhausting administrative procedures, so long as it did not seek affirmative relief.  In view of our conclusions regarding the nature of a petition to reopen under Pennsylvania law, this concession essentially means that the RTC agrees that W.W. should be able to assert its defenses in the removed case.

### B.  The counterclaim

The counterclaim for damages included in the petition to open stands on a different footing.  Unless a claimant exhausts the statutory claim procedure, FIRREA divests courts of jurisdiction over "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver . . . ."  Section 1821(d)(13)(D). While defenses to Bell's confession of judgment action pertain to the assets of W.W., the counterclaim clearly asserts a claim over Bell's assets.  "[I]f in addition to raising defenses or affirmative defenses to an action or a claim, a party also raises

27

counterclaims, such counterclaims would fall under section 1821(D)(13)(D)'s jurisdictional bar." National Union, 28 F.3d at 394. We must decide, then, whether a counterclaim should escape section 1821(d)(13)(D)'s jurisdictional bar because it should be regarded as a continuation of a pre-receivership lawsuit under section 1821(d)(5)(F)(ii).

Congress's express purpose in creating the claims determination procedure embodied in FIRREA was to:

> [E]nable[] the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly. The exhaustion requirements should lead to a large number of claims being resolved without resort to further procedures. . . . Thus, the claim resolution process established in this section should allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts.

H.R. Rep. No. 101-54(I) at 419. The counterclaim brought by W.W., in contrast to its defenses to the confessed judgment, is a "claim[] against [a] failed financial institution," precisely the kind of post-receivership claim that Congress wanted resolved "expeditiously and fairly," through the administrative claims process. A holding that a counterclaim is not barred would permit a litigant, as the district court observed, to "convert its claim to a pre-receivership claim merely by making it a part of litigation which predates the receiver's takeover." W.W.'s App. 38. This procedure would enable a claimant in a pending pre-receivership action effectively to evade FIRREA's strictures and thereby subvert Congress's express purpose to "allow the FDIC

28

to quickly resolve many of the claims without unduly burdening the district courts." H.R. Rep. No. 101-54(I) at 419. Consequently, we find that a post-receivership counterclaim is subject to section 1821(d)(13)(D)'s jurisdictional bar, at least if, as here, the counterclaim is asserted as a basis for relief beyond defeating the complaint.[0]

As a result, the Philadelphia Court of Common Pleas lacked jurisdiction over the counterclaim when it was filed, because it was filed after RTC's appointment as receiver of Bell. Consequently, the district court never possessed subject matter jurisdiction over W.W.'s counterclaim, and properly dismissed this part of the removed action.

### III.  CONCLUSION

We find that the district court properly granted summary judgment to the RTC in the federal case, No. 93-4210, as the court lacked subject matter jurisdiction over it. The district court erred, however, in entirely denying the petition to open judgment in the removed case, No. 91-3788. Accordingly, we will affirm the district court's summary judgment in favor of the RTC No. 93-4210 and will affirm the district court's denial of the petition to open judgment in No. 91-3788 with respect to the counterclaim raised in the petition. We will vacate the district court's denial of the petition to open judgment in No.

---

[0] We observe that interpreting FIRREA to preclude jurisdiction over a post-receivership counterclaim raises none of the due process concerns raised by interpreting FIRREA to prevent W.W. from raising a defense to a judgment confessed against it.

91-3788 with respect to the defenses to the confessed judgment raised in W.W.'s petition, and will remand the case to the district court for proceedings consistent with this opinion. Thus, we will affirm in part and will vacate in part the district court's orders of November 17, 1994, and February 29, 1995. On the remand, the district court should consider the petition to open judgment without regard for the FIRREA jurisdictional bar, but only insofar as W.W. seeks to assert defenses to the complaint. Of course, we express no opinion on whether the court should grant W.W. relief on its petition as we limit our opinion to the jurisdictional issues. The parties will bear their own costs on this appeal.