IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-60596

_____

FEDERAL DEPOSIT INSURANCE CORPORATION,
As Manager of the FSLIC Resolution Fund

                                     Plaintiff-Counter
                                     Defendant-Appellant,

versus

TOM B SCOTT, JR

                                     Defendant-Counter Claimant-
                                     Appellee.

_____

Appeal from the United States District Court
For the Southern District of Mississippi
_____

October 1, 1997

Before HIGGINBOTHAM, DUHÉ, and WIENER, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Federal Deposit Insurance Corporation appeals summary judgment granted to Tom Scott, Jr., on his indemnification claim against the FDIC.  We find that the district court lacked jurisdiction over Scott's counterclaim because he failed to exhaust his administrative remedies with the FDIC, as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

I.

This case arises out of the troubled history of a Mississippi savings and loan association.  On August 10, 1989, the Office of Thrift Supervision appointed the Resolution Trust Corporation as receiver for Unifirst Bank for Savings, F.A.  The RTC

simultaneously organized Unifirst Bank for Savings, A Federal Savings and Loan Association. As receiver for Old Unifirst, the RTC then entered into a Purchase and Assumption Agreement with New Unifirst for the purpose of transferring certain assets and liabilities from the old entity to the new.

On June 15, 1990, the OTS appointed the RTC as receiver for New Unifirst. The RTC then entered into a contract of sale with its corporate alter ego, transferring to RTC Corporate all of the rights, title, and interest in the claims of New Unifirst. On December 31, 1995, pursuant to the Resolution Trust Corporation Completion Act, 12 U.S.C. §§ 1441a(m)(1)-(2), RTC Corporate ceased to exist. All of RTC Corporate's assets, including its interest in New Unifirst, were transferred to the FDIC as the manager of the Federal Savings and Loan Insurance Corporation Resolution Fund.

On March 22, 1994, the RTC, in its capacity as receiver for New Unifirst, filed a complaint seeking damages from Tom Scott, Jr., the longtime president and chief executive officer of Unifirst. The complaint alleged that Scott had breached various duties to Unifirst in connection with his oversight of several loans the institution had made.

Scott counterclaimed for indemnification. He asserted that an indemnification resolution adopted by the Board of Directors of Old Unifirst entitled him to recoup any award obtained against him, as well as attorneys' fees and expenses in defending against the FDIC's suit.

Thereafter, the FDIC[1] moved to dismiss Scott's counterclaim on several grounds.  First, it argued that the district court lacked jurisdiction to hear Scott's counterclaim because FIRREA required Scott to exhaust his administrative remedies with the FDIC before proceeding in court.  Second, the FDIC asserted that Scott had no grounds for seeking indemnification, either under the Old Unifirst bylaws, OTS regulations, or the Purchase and Assumption Agreement.

In a long series of rulings, the district court disposed of the FDIC's and Scott's claims.  On April 18, 1995, the court denied the FDIC's jurisdictional defense to Scott's counterclaim, reasoning that Scott need not exhaust his administrative remedies with the FDIC because the FDIC's lawsuit against him demonstrated official bias against his indemnification claim.  At the same time, the court ruled that the Purchase and Assumption Agreement was ambiguous as to whether New Unifirst succeeded to Old Unifirst's obligation to indemnify Scott, thus requiring a trier of fact to resolve the matter

Scott moved for summary judgment on the counterclaim, but the district court denied his motion on July 1, 1995.  After the Mississippi legislature retroactively altered the state's gross negligence standard, he also moved for partial summary judgment on four of the FDIC's five breach-of-duty claims against him.  On June

---

[1]After the FDIC succeeded to the RTC's interests in New Unifirst, the district court entered an order replacing the "RTC" as the plaintiff in this action with the "FDIC as Manager of the FSLIC Resolution Fund."  We hereinafter refer to the plaintiff as the "FDIC."

8, 1995, the court granted this motion, leaving only the FDIC's claim for gross negligence.

Scott then moved for summary judgment on the FDIC's remaining claim against him and on his indemnification counterclaim. On May 30, 1996, the district court granted summary judgment for Scott on the FDIC's last claim. Moreover, the court reversed its previous decision on the indemnification issue, concluding that the Partnership and Assumption Agreement was not ambiguous and that New Unifirst had acquired Old Unifirst's liability for indemnification. Accordingly, it granted Scott's motion for summary judgment on his indemnification counterclaim, and it entered final judgment in the case.

The FDIC timely appealed the district court's indemnification rulings only. On appeal, the FDIC again argues that FIRREA withdraws jurisdiction from federal courts to hear Scott's claim until he exhausts his administrative remedies. Alternatively, it contends that Scott is not owed indemnification because New Unifirst never acquired Old Unifirst's liability for indemnification and because OTS regulations requiring indemnification for thrift executives do not apply to Scott.

## II.

As a threshold matter, we must first determine whether the district court properly exercised jurisdiction. Because we find that it did not, we need not reach the merits of Scott's indemnification counterclaim.

### A.

4

In enacting FIRREA, Congress established a comprehensive administrative procedure for the resolution of claims against a failed financial institution held in receivership by the FDIC. All creditors or other persons having such claims must first present them to the receiver for an administrative determination of whether they should be paid. 12 U.S.C. §§ 1821(3)-(13). Congress explicitly deprived federal courts of subject matter jurisdiction over claims not so presented:

> (D) Limitation on judicial review
> Except as otherwise provided in this subsection, no court shall have jurisdiction over —
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The other circuits have uniformly held that in § 1821(d)(13)(D), Congress established an administrative exhaustion requirement; before a litigant may bring a claim in court against the receiver, the FDIC must first administratively deny the claimant relief. See, e.g., Simon v. FDIC, 48 F.3d 53, 57 (1st Cir. 1995); RTC v. Elman, 949 F.2d 624, 627 (2d Cir. 1991); RTC v. W.W. Dev. & Management, Inc., 73 F.3d 1298, 1304 (3d Cir. 1996); Brady Dev. Co., Inc. v. RTC, 14 F.3d 998, 1007 (4th Cir. 1994); Bueford v. RTC, 991 F.2d 481, 484 (8th Cir. 1993).

The classification of the exhaustion requirement in § 1821(d)(13)(D) as being of congressional or judicial origin is of major consequence. See Information Resources, Inc. v. United

5

<u>States</u>, 950 F.2d 1122, 1126 (5th Cir. 1992).  If Congress itself imposes an exhaustion requirement, courts must enforce its express terms.  <u>See</u> <u>Coit Indep. Joint Venture v. FSLIC</u>, 489 U.S. 561, 579, 109 S. Ct. 1361, 1372, 103 L. Ed. 2d 602 (1989).  In such cases, failure by a claimant to exhaust deprives federal courts of jurisdiction.  <u>Information Resources</u>, 950 F.2d at 1126.

However, where Congress has not explicitly mandated exhaustion, "courts are guided by congressional intent in determining whether application of the [exhaustion] doctrine would be consistent with the statutory scheme."  <u>Patsy v. Board of Regents</u>, 457 U.S. 496, 502 n.4, 102 S. Ct. 2257, 2560 n.4, 73 L. Ed. 2d 172 (1982).  If courts find that exhaustion would promote both the Congressional goals in erecting a particular administrative regime and judicial efficiency, they may exercise their discretion and require claimants to exhaust administrative remedies before proceeding in court.  <u>Coit</u>, 489 U.S. at 579, 109 S. Ct. at 1372 ("Where a statutory requirement of exhaustion is not explicit, 'courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme.'") (quoting <u>Patsy</u>, 457 U.S. at 502 n.4, 102 S. Ct. at 2560 n.4).  By the same token, courts can excuse such exhaustion requirements of their own creation "where the interests of the individual weigh heavily against requiring administrative exhaustion." <u>McCarthy v. Madigan</u>, 503 U.S. 140, 146, 112 S. Ct. 1081, 1087 (1992), 117 L. Ed. 2d 291 (1992).  If an exhaustion requirement is judicially implied, courts may decline to enforce it

6

if "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action," id. 503 U.S. at 146-47, 112 S. Ct. at 1087, if there is some doubt as to whether an agency is empowered to grant effective relief, id. 503 U.S. at 147, 112 S. Ct. at 1088, or if "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it," id. 503 U.S. at 148, 112 S. Ct. at 1088.

Despite the unanimity among the circuit courts in finding that Congress in § 1821(d)(13)(D) explicitly mandated exhaustion, the district court below construed the major Fifth Circuit case on the issue, Meliezer v. RTC, 952 F.2d 879 (5th Cir. 1992), as holding instead that courts have created FIRREA's exhaustion requirement. Accordingly, the district court concluded that it was free to excuse exhaustion in the exercise of its judicial discretion. The court waived exhaustion for Scott because it felt that Scott's administrative remedies within the FDIC would have been futile, as the agency's suit against Scott demonstrated that it was biased against his indemnification counterclaim. We do not reach this bias issue, because we disagree with the district court's reading of Meliezer.

In Meliezer, this court dismissed for lack of jurisdiction the claims of two mortgage assumers who had brought suit against the RTC but had not exhausted their administrative remedies under FIRREA. We held that Congress unambiguously crafted an exhaustion requirement in FIRREA:

7

> Typically, exhaustion of administrative remedies is required where Congress imposes such a requirement. If the statutory language is not explicit, courts are guided by congressional intent in determining whether exhaustion is required. Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required. . . . [S]ection 1821(d)(13)(D) clearly establishes a statutory exhaustion requirement.

Id. at 882 (citations omitted). The district court, pointing to our phrase, "FIRREA does not explicitly mandate exhaustion," concluded that administrative exhaustion under FIRREA must be of judicial rather than legislative origin. Relying on McCarthy, it reasoned that the Meliezer court, in looking to congressional intent and statutory language, must necessarily have been creating an exhaustion requirement by judicial implication, not enforcing one as mandated by congressional direction. See McCarthy, 503 U.S. at 144, 112 S. Ct. at 1086 ("Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs.") (citations omitted).

We must disagree with this characterization of Meliezer. Our statement in Meliezer, "FIRREA does not explicitly mandate exhaustion," was meant only to indicate that the statute did not employ the express term, "administrative exhaustion." Yet we did not hesitate to recognize that FIRREA's exhaustion requirement fell into the first, jurisdictional category of exhaustion requirements, as the structure of the statute evidences Congress's intent to erect an administrative exhaustion regime. See Meliezer, 952 F.2d at 882 ("[T]he language of the statute and indicated congressional

8

intent make clear that [exhaustion] is required. . . . [S]ection 1821(d)(13)(D) clearly establishes a statutory exhaustion requirement."). Exhaustion requirements fall into the second, judicially-created category when it is far less obvious that Congress established an explicit system of administrative exhaustion and it is necessary for courts to imply one to effectuate the goals of a statute and promote judicial efficiency.

Thus, Meliezer, in finding an exhaustion requirement, found one that was of intentional congressional design. Accordingly, we lack jurisdiction to entertain Scott's counterclaim against the FDIC until Scott exhausts his administrative remedies. Although Scott's resort to administrative channels may be futile, we are powerless to waive a congressionally-imposed exhaustion requirement.

At oral argument, Scott advanced a new argument: the administrative exhaustion requirement in the statute does not apply to post-receivership claims that arise after FIRREA's ninety-day, statutory bar date for bringing actions against a receivership. Although the statutory bar date in the case elapsed before Scott brought his counterclaim, the FDIC has an internal claims procedure that allows claimants to file "late claims" that arise after the bar date. See Heno v. FDIC, 20 F.3d 1204, 1210-14 (1st Cir. 1994) (publishing the FDIC procedures). We defer to the FDIC's reasonable interpretation of FIRREA as requiring administrative exhaustion even for post-bar date claims. See Simon v. FDIC, 48 F.3d 53, 57-58 (1st Cir. 1995); Heno, 20 F.3d at 1208-10.

9

Perhaps anticipating our response to the lower court's exhaustion ruling, Scott attempts to rescue jurisdiction by escaping from the express language of 12 U.S.C. § 1821(d)(13)(D). Section 1821(d)(13)(D) bars federal courts from entertaining any "claim" made against a receiver, unless the claimant has exhausted all administrative remedies. Scott contends that his action for attorneys' fees is not a "claim" under FIRREA and thus exhaustion does not apply to him. We reject this argument as well.

Whether an indemnification action is a "claim" under FIRREA is a matter of first impression for our circuit. The other courts that have addressed the issue have divided over it. Compare RTC v. Titan Fin. Corp., 22 F.3d 923, 927 (9th Cir. 1994) (holding that attorney's fees are not a "claim" under FIRREA), RTC v. Artley, No. CV492-209 (S.D. Ga. Mar. 30, 1993) (same), and RTC v. Western Techs., Inc., 877 P.2d 294, 299-304 (Ariz. Ct. App. 1994) (same), with RTC v. Heiserman, 839 F. Supp. 1457, 1470 (D. Colo. 1993) (holding that indemnification is a "claim" under FIRREA); and RTC v. Youngblood, 807 F. Supp. 765, 770 (N.D. Ga. 1992) (holding that a suit for attorney's fees is a "claim" under FIRREA). Scott employs a temporal argument, relying on the reasoning of Western Technologies. According to Western Technologies, the word "claim" means a "cause of action," and an action for attorneys' fees is not an independent "cause of action," but rather arises only after the FDIC engages in litigation against the claimant. See Western Techs., 877 P.2d at 300. Thus, indemnification must not be the

10

kind of "claim" contemplated by Congress in drafting FIRREA. The Ninth Circuit employed similar analysis in Titan Financial, reasoning that a defendant's counterclaim against the FDIC is not subject to the exhaustion requirement, if, prior to the present litigation, (1) the defendant was not a creditor of the FDIC or its predecessor-in-interests, and (2) the defendant had no independent basis for filing a claim against either. Titan Fin. Corp., 22 F.3d at 927.

We fail to see, however, how the temporal character of an indemnification action affects the exhaustion question. True, Scott's basis for indemnity did not originate until after he was sued by the FDIC. Recently, however, we held in Home Capital Collateral, Inc. v. FDIC, 96 F.3d 760 (5th Cir. 1996), that FIRREA's exhaustion requirement applies even to claims that arise post-receivership from the actions of the receiver, id. at 763. Here, the fact that the FDIC created Scott's claim for indemnification through its own activities should not change the nature of his cause of action, for Home Capital instructs us that such claims are still subject to § 1821(d)(13)(D).

Admittedly, Scott's counterclaim for indemnity is related to the litigation that the counterdefendant, the FDIC, initiated. Yet that relationship does not alter the fact that Scott's request for indemnity is an independent claim. In the end, Scott is suing to enforce his rights under Old Unifirst's bylaws. This indemnity suit, therefore, is an independent claim for relief, not an

11

affirmative defense or the like.[2]  See A & B Constr., Inc. v. Atlas Roofing & Skylight Co., 867 F. Supp. 100, 105 (D.R.I. 1994) ("Indemnity . . . is an independent cause of action."); FDIC v. Niblo, 821 F. Supp. 441, 456 (N.D. Tex. 1993) ("[I]ndemnity is not an affirmative defense within the purview of Federal [Rule of Civil Procedure] 8(c), but rather a claim for recovery which must be pled and proved").  If, for example, a third party had sued Scott for his actions as president of Unifirst, he would be entitled to bring a claim for indemnification against the FDIC as a separate suit, should the FDIC refuse to pay his attorneys' fees.[3]  Here, the hypothetical third party and the FDIC are one and the same, but the principle is no different: Scott's counterclaim is an independent claim, whether against a plaintiff or a third-party defendant.

---

[2]Other courts have divided on the issue of whether affirmative defenses are subject to FIRREA's exhaustion requirement.  Compare RTC v. Midwest Federal Sav. Bank, 36 F.3d 785, 793 (9th Cir. 1993) (holding that affirmative defenses are not subject to exhaustion), and National Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 393 (3d Cir. 1994) (same), with FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C., 808 F. Supp. 1263, 1280-81 (E.D. La. 1992) (holding that some affirmative defenses are subject to exhaustion); FSLIC v. Shelton, 789 F. Supp. 1367, 1370-71 (M.D. La. 1992) (same).  We need not resolve the controversy here, for we find that Scott's action for indemnification is in the nature of a counterclaim, not an affirmative defense.  Courts have uniformly held that parties must exhaust their administrative remedies under FIRREA before proceeding on a counterclaim.  See National Union, 28 F.3d at 394 n.25 ("It appears that there is a forming consensus in the courts that counterclaims are jurisdictionally barred by § 1821(d)(13)(D), unless administrative remedies are exhausted."); McGinnis, 808 F. Supp. at 1280 ("Courts have, with one voice, held that § 1821(d)(13)(D)'s jurisdictional limits apply to counterclaims against the FDIC . . . .").

[3]Because we dispose of this matter on jurisdictional grounds, however, we do not express an opinion on the merits of any indemnification claim that might be brought by Scott.

Accordingly, Scott was obliged to present this indemnification claim, like all others, to the FDIC for administrative review. See National Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 394 (3d Cir. 1994) (holding that an action "which asserts a right to payment" is a claim subject to exhaustion under FIRREA).

That Scott's indemnification claim is subject to FIRREA's exhaustion requirement is made clear by the language of the statute. FIRREA withdraws jurisdiction, absent exhaustion, from district courts for any claim or action for payment from the assets of the receivership. 12 U.S.C. § 1821(d)(13)(D)(i). Were Scott to prevail on his counterclaim, his attorneys' fees would come from the receivership's assets. Although Scott also advances an argument premised on OTS regulations, he bases his primary claim for indemnification upon a bylaw that Old Unifirst's Board of Directors approved in 1984, providing for indemnification for Old Unifirst's officers and directors. We liken this bylaw to a contractual provision for indemnity between two parties, as Scott has the power to enforce it. As we held in Interfirst Bank Abilene, N.A. v. FDIC, 777 F.2d 1092, 1097 (5th Cir. 1985), generally, parties cannot recover attorneys' fees against the assets of a failed bank because doing so would violate the rule that the assets of a failed institution should be ratably distributed amongst its creditors holding approved or adjudicated claims. This rule does not apply, however, where "recovery of attorneys' fees is [] specified in the parties' contract or where there is [a] collateral fund from which they can be recovered."

13

<u>Id.</u> If attorneys' fees are provided for contractually, parties may seek them from the receivership's assets.  <u>See</u> <u>RTC v. Heinhold Commodities, Inc.</u>, 803 F. Supp. 1342, 1347 (N.D. Ill. 1992); <u>Royal Bank v. FDIC</u>, 733 F. Supp. 1091, 1099 (N.D. Tex. 1990).

Furthermore, FIRREA denies jurisdiction to federal courts over "any claim relating to any act or omission" of the receivership. § 1821(d)(13)(D)(ii).  Here, Scott's claim arises from an "act" of the FDIC in its capacity as receiver — its lawsuit against him. Thus, the plain language of the statute dictates that Scott must first bring his claim administratively.

Scott contends, however, that classifying attorneys' fees as a "claim" under the statute would lead to wasteful and inefficient piecemeal litigation.  <u>See</u> <u>Western Techs.</u>, 977 P.2d at 303 ("Requiring parties to pursue 'claims' for attorneys' fees administratively through RTC thus would serve only to frustrate and delay the process.  Such a requirement would be antithetical to the statute's purpose to 'quickly and efficiently resolve claims against a failed institution without resorting to litigation.'") (quoting <u>Meliezer</u>, 952 F.2d at 883).  Yet subjecting an indemnification request to the administrative process is no more inefficient than doing the same for any other type of counterclaim. Other courts have uniformly held that counterclaims are subject to § 1821(d)(13)(D).  <u>See, e.g.</u>, <u>RTC v. W.W. Dev. & Management, Inc.</u>, 73 F.3d 1298 (3d Cir. 1996); <u>Heno v. FDIC</u>, 20 F.3d 1204, 1209 (1st Cir. 1993); <u>FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.</u>, 808 F. Supp. 1263, 1280-81 (E.D. La. 1992); <u>FSLIC v. Shelton</u>,

14

789 F. Supp. 1367, 1372-73 (M.D. La. 1992). With all other counterclaims, therefore, defendants must first make an administrative demand on the FDIC before proceeding with their cases, even if they are in the middle of litigation. We see no reason why claims for attorneys' fees should be any different.

III.

We recognize that our holding today makes for an inefficient FDIC claims process. Although we do not decide the issue, counsel at oral argument instructs us that once this appeal is disposed of, Scott is not barred from making his administrative demand, seeing it get rejected, and then promptly refiling his claim. Before long we may find both parties back before this court, once again asking us to resolve the merits of Scott's indemnification claim. Congress intended to create an efficient system for resolving claims arising from the disastrous failure of savings and loan companies. However, the statute here makes waste. Regardless, it is not within our province to rewrite statutes simply to make them more efficient.

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case to the district court with instructions to dismiss for want of jurisdiction.

15